UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MARIO ARTIGA,

      *Petitioner*,

   - against-

KENNETH GENALO, *Acting Director of U.S.*
*Immigration and Customs Enforcement and Removal*
*Operations New York City Field Office,* KRISTI NOEM,
*in her official capacity as Secretary of the U.S.*
*Department of Homeland Security*, PAMELA BONDI,
*in her official capacity as U.S. Attorney General.*

      *Respondents.*
--------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

25-CV-5208 (OEM)

ORELIA E. MERCHANT, United States District Judge:

  Petitioner Mario Artiga ("Petitioner") filed a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement

("ICE"). *See* Petition for Writ of Habeas Corpus ("Pet."), Dkt. 1. Petitioner alleges that he was

unlawfully arrested at his home in Long Island, New York on September 15, 2025, and detained

by ICE[1] without an individualized determination as to his dangerousness or flight risk. *Id.* ¶ 21.

  Petitioner alleges his detention violates the Due Process Clause of the Fifth Amendment,

and he seeks immediate release from custody and that he be returned to New York within twenty-

four hours at Respondents' expense. For the following reasons, Petitioner's petition for a writ of

habeas corpus is granted.

---

[1] Petitioner was first detained at an ICE facility in Nassau County, New York, and is currently detained at an ICE Processing Center in Folkston, Georgia.

## BACKGROUND

Petitioner is national of El Salvador who fled to the United States seeking protection from persecution by an El Salvadorian gang that threatened to murder or violently injure him. Pet. ¶¶ 8-9.

On or about August 31, 2018, Petitioner entered the United States through Texas. *Id.* ¶ 9, 11. The parties dispute whether, as Petitioner alleges, Petitioner was detained upon entry in the ICE ERO South Texas Detention Center in Pearsall, Texas, *Id.* ¶ 11, or whether, according to Respondents, he was "encountered by" U.S. Customs and Border Protection ("CBP") near Falfurrias, Texas, and processed at the Falfurrias station on September 5, 2018, Declaration of Deportation Officer Katherine Rey ("Rey Decl."), Dkt. 15-1, ¶ 5. Respondents assert that on September 6, 2018, CBP served Petitioner with a Notice and Order of Expedited Removal[2] "charging him as inadmissible to the United States under the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. 1182(a)(7)(A)(i)(I), and ordering his removal pursuant to INA § 235(b)(1), 8 U.S.C. § 1225(b)(1)." Rey Decl. ¶ 7. Petitioner avers that "no removal order has ever been issued against [him]." Pet. ¶ 17.

On November 1, 2018, Petitioner was arrested and placed in ICE custody, pending removal, in accordance with a "Warrant for Arrest of Alien" issued "pursuant to sections 236 and 287 of the INA, 8 U.S.C. § 1226, 1357, and 8 C.F.R. § 287." Rey Decl. ¶ 10; Warrant for Arrest of Alien dated November 1, 2018 ("November 1, 2018 Warrant for Arrest"), Dkt. 17-1. On November 21, 2018, Petitioner was transported from processing in Pearsall, Texas, to a detention center in Encinal, Texas. Rey Decl. ¶ 11.

---

[2] Respondents have not produced the Notice and Order of Expedited Removal dated September 6, 2018.

On December 1, 2018, Petitioner conducted a credible fear interview with the U.S. Department of Homeland Security ("DHS") Asylum Office, "which determined that Petitioner had a credible fear of persecution if he returned to El Salvador." Pet. ¶ 10; Credible Fear Worksheet, Dkt. 1-2 at pp. 17-21.[3] On December 4, 2018, DHS presented Petitioner with a "Notice to Appear" charging him with removal from the United States pursuant to Section 212(a)(7)(A)(i)(I) of the INA and placed him in removal proceedings "under section 240 of the Immigration and Nationality Act," directing him to appear before an immigration judge at a date and time to be determined. Notice to Appear, Dkt. 1-2 at pp. 25-26. The Notice to Appear has boxes designating whether the noncitizen[4] in removal proceedings is "an arriving alien," "an alien present in the United States who has not been admitted or paroled," or "admitted to the United States, but are removable for reasons stated below." *Id.* Petitioner was identified as "an alien present in the United States who has not been admitted or paroled." *Id.* According to Respondents, "this Notice to Appear vacated the Notice and Order of Expedited Removal as per 8 C.F.R. § 208.30." Rey Decl., ¶ 12.

A few days later, on December 7, 2018, DHS released Petitioner from custody "[u]nder bond in the amount of $2,500," "pending a final administrative determination," of his case and "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations." Order of Release on Bond, Dkt. 1-2 at p. 23. On December 11, 2018, the bond was executed and signed and ICE commenced removal proceedings against Petitioner under INA § 240, 8 U.S.C. § 1229a. Rey Decl. ¶¶ 14-15. Upon posting bond, Petitioner was released from the detention center in Encinal on December 12, 2018. *Id.* ¶ 16.

On March 12, 2019, Petitioner filed a Form I-1589, Application for Asylum or Withholding of Removal under the Convention Against Torture ("CAT"). *See* Order Granting Motion for

---

[3] The pages cited refer to the PageID numbers.
[4] The terms "noncitizen" and "alien" are used interchangeably in this Order.

Immigration Judge Khan to Deem Respondent Filed Form I-589, Dkt. 1-2 at p. 31. Petitioner transferred his immigration case to a New York Immigration Court, Rey Decl. ¶ 17, where he was living at the time of his arrest and detention, Pet. ¶ 21. Petitioner has "never violated the terms of his bond" and "has no criminal history." Pet. ¶¶ 17-18. Petitioner has work authorization in the United States. Tr. 37:20-21. Petitioner awaits his individual merits hearing in immigration court scheduled for December 11, 2025. Pet. ¶ 19.

On September 15, 2025, an I-200 Warrant for Arrest of Alien[5] was issued for the arrest of Petitioner, "authorized pursuant to sections 236 and 287 of the INA." Rey Decl. ¶ 26. That same day, Petitioner was encountered by ICE at his home "incidental to an investigation regarding a separate individual." *Id.* He was then transported to ICE's Central Islip hold room for further processing. *Id.* ¶ 27. Petitioner contends that this arrest denied him due process because it occurred "without an individualized assessment as to his dangerousness or flight risk, or any kind of process at all sufficient to [qualify] as a valid exercise of discretion." Petitioner's Memorandum of Law in Reply to the Government's Opposition and in Support of Emergency Motion for Injunctive Relief ("Reply"), Dkt. 17 at 7 (internal quotations omitted).

Following his arrest and processing, Petitioner was placed in the Nassau County Correctional Center in East Meadow, New York. Rey Decl. ¶ 29. On September 17, 2025, he was then transferred to the Delaney Hall Detention Facility in Newark, New Jersey. *Id.* ¶ 30. On September 19, 2025, he was transferred to the Alexandria Staging Facility in Alexandria, Louisiana. *Id.* ¶ 31. Then, on September 22, 2025, Petitioner was transferred to the ICE Processing Center in Folkston, Georgia, where he is now held. *Id.* ¶¶ 3, 32.

---

[5] Neither party has produced the Arrest Warrant dated September 15, 2025.

## PROCEDURAL HISTORY

On September 17, 2025, Petitioner commenced this action by filing a petition for a writ of habeas corpus supported by exhibits. Pet., Dkt. 1.

On September 18, 2025, the Court issued an Order to Show Cause ("OSC") why the writ should not be granted. The Court's Order directed Petitioner to serve a copy of the OSC and the Petition on Respondents by September 22, 2025, directed Respondents to file a response by September 22, 2025, and set a hearing for September 24, 2025. The Court also directed that Petitioner not be removed from the United States until further order of the Court.

On September 19, 2025, Respondents requested an extension of time to file a return to the OSC and an adjournment of the show cause hearing. The Court granted the extension request in part, directed Respondents to file a return by September 23, 2025, and rescheduled the hearing to September 25, 2025, at 11:00 a.m. On September 23, 2025, Respondents filed a return. Respondents' Response to the Court's Order to Show Cause why the Petition for Writ of Habeas Corpus Should Not be Granted and in Opposition to the Petition ("Resp."), Dkt. 15. On September 24, 2025, Petitioner requested an extension of time to review Respondents' return papers and the Court rescheduled the hearing to September 29, 2025, at 2:00 p.m. Petitioner filed a reply and exhibit on September 29, 2025. Reply, Dkt. 17.

The Court held a hearing on the Order to Show Cause on September 29, 2025, at 2:00 p.m. Official Transcript of Proceeding ("Tr.").

## DISCUSSION

Petitioner argues that his detention by Respondents on September 15, 2025, without an individualized assessment as to whether he is a flight risk and a danger to the community violates the Due Process Clause. *See generally* Pet. There are four broad issues raised: (1) whether the

Court lacks jurisdiction; (2) whether Petitioner is required to exhaust his administrative remedies before seeking relief from this Court; (3) whether Petitioner was detained under 8 U.S.C. § 1225(b)(2)(A) or under 8 U.S.C. § 1226(a); and (4) to the extent the Court finds that Petitioner was detained under § 1226(a), whether Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The Court addresses each issue in turn.

## A. Whether the Court Lacks Jurisdiction

Respondents argue that the Court lacks jurisdiction to review the revocation of Petitioner's bond because such claims are subject to a jurisdictional bar under 8 U.S.C. § 1252(a)(2)(B)(ii). Resp. at 10. However, Petitioner challenges his allegedly unconstitutional detention. Respondents do not contest that the Court has jurisdiction to review Petitioner's challenges to his detention. Federal courts have jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court has jurisdiction to review Petitioner's habeas petition.

## B. Whether Petitioner is Required to Exhaust Administrative Remedies

The parties do not contest that 28 U.S.C. § 2241 confers jurisdiction on this Court to hear the instant petition. Rather, Respondents argue that Petitioner's challenge to his detention is premature because he has not exhausted his administrative remedies in immigration court by requesting discretionary parole under 8 U.S.C. § 1225 and that none of the exceptions to the exhaustion requirement apply. Resp. at 8-9.

Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Quintanilla v. Decker*, 21-CV-417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, 18-CV-2640, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). However, exhaustion is a "prudential matter," not a

"statutory requirement." *Id.* Indeed, courts in this Circuit have excused exhaustion when considering whether "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003); *see, e.g., J.U. v. Maldonado,* 25-CV-04836 2025 WL 2772765, at *4 (E.D.N.Y Sep. 29, 2025); *Lopez Benitez v. Francis*, 25-CV-5937 (DEH), 2025 WL 2371588, at *14 (S.D.N.Y. Aug. 13, 2025).

Petitioner contends that exhaustion of his administrative remedies is not necessary because (1) it would provide no genuine opportunity for adequate relief, (2) irreparable injury may occur without immediate judicial relief, (3) it would be futile, and (4) Petitioner raises substantial constitutional questions. Pet. ¶¶ 26-28; Reply at 6-8. Petitioner argues that given the recent precedent set in immigration courts denying bond appeal, *see, e.g., Matter of Yajure Hurtado*, 29 I&N dec. 216 (BIA Sept 5, 2025), a request for discretionary parole would similarly be futile. Pet. ¶¶ 26-28; Reply at 7. He further contends that he faces irreparable injury without immediate judicial relief given that "while in ICE custody and detention [he was] repeatedly told by ICE officers that he will be forcibly deported to El Salvador on the next flight or otherwise soon." Reply at 7. Petitioner also asserts that the substantial constitutional questions that he raises as to his liberty and due process rights also forecloses the need to exhaust administrative remedies in this action. *Id.* at 7-8.

Petitioner's allegations of his detention by ICE raise a substantial constitutional question that cannot be properly adjudicated administratively. Here, there are no administrative remedies available that could provide Petitioner with the relief he seeks. *See Beharry,* 329 F.3d at 62; *J.U.* 2025 WL 2772765, at *4 (finding administrative remedies excused where petitioner raised

constitutional question as to his unlawful detention and there was no administrative remedy available where ICE had not made an initial decision to detain as is required for noncitizens detained under § 1226(a)); *see also Bermudez Paiz v. Decker*, 18-CV-4759 (GHW) (BCM) 2018 WL 6928794, n. 14 (S.D.N.Y. Dec. 27, 2018) (it appears "that the parole process is vulnerable to political pressure, further undermining any argument that it can be relied on to furnish even a 'base level of due process.'" (internal citation omitted)). Thus, Petitioner has raised a constitutional question and the only cure to his allegedly unlawful detention is the vacatur of detention – that is, the release of Petitioner from ICE custody.

Therefore, the Court concludes that Petitioner is excused from exhausting administrative remedies before seeking relief in this Court.

### C. Whether Petitioner is Detained Under 8 U.S.C. § 1225 or § 1226

A threshold question in this case is whether Petitioner is detained pursuant to the government's authority under 8 U.S.C. § 1225(b), as Respondents contend, or under 8 U.S.C. § 1226(a), as the November 2018 Arrest Warrant, December 2018 Notice to Appear, December 2018 Order of Release on Bond, and September 2025 Arrest Warrant would indicate.

#### 1. Statutory and Regulatory Framework of § 1225 and § 1226

The two principal statutes that govern the detention of noncitizens pending removal proceedings are 8 U.S.C. § 1225 and § 1226. The parties agree that the two provisions are mutually exclusive; a noncitizen can only be subject to § 1225 or § 1226, not both. Tr. at 18:5-10 (When asked whether "the provisions are mutually exclusive, that is the petitioner can't be subject to both," Petitioner and Respondents agreed).

### a) Section 1225

Section 235(a) of the INA, codified at 8 U.S.C. § 1225, provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *id.* (citing § 1225(b)(1)(A)(i)), and other noncitizens who receive special designation by the Attorney General, § 1225(b)(1)(A)(iii). Section 1225(b)(2) is a "catchall provision" that applies to all other applicants. *See Jennings*, 583 U.S. at 287.

Both § 1225(b)(1) and (b)(2) require the detention of persons deemed to be applicants for admission. Applicants for admission covered by § 1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that noncitizen is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Jennings*, 583 U.S. at 287 (quoting § 1225(b)(1)(B)(ii)). However, applicants who do not assert such claims or whom the immigration officials have "found not to have such a fear," this provision requires that they "shall be detained . . . until removed." 8 U.S.C. § 1225(b)(1)(A)(ii), (B)(iii)(IV).

Turning to § 1225(b)(2), it provides:

in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

The "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez,* 2025 WL 2371588, at *3. Regardless of which sub-section of § 1225(b)'s mandatory detention applies to a particular noncitizen, that noncitizen may nonetheless be, in the discretion of the Secretary of Homeland Security, "parole[d] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288. This process "permits a noncitizen to physically enter the country . . . subject to a reservation of rights by the Government that it may continue to treat the noncitizen 'as if stopped at the border.'" *Lopez Benitez*, 2025 WL 2371588, at *3 (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 139 (2020); citing *Gomes v. Hyde,* 25-CV-11571, 2025 WL 1869299, at *2 (D. Mass. Jul. 7, 2025))). Once the purposes of parole have been achieved, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

**b) Section 1226**

Section 1226(a) governs a separate non-mandatory detention scheme and provides the "default rule" for detaining and removing aliens "already present in the United States." *Jennings*, 583 U.S. at 303. The Attorney General is permitted but not required to issue warrants for noncitizens' arrest and detention pending removal proceedings and to release noncitizens on bond. *Id.* It provides that "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8

U.S.C. § 1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." *Id.* § 1226(a)(1)-(2). Section 1226(c) contains several exceptions for persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." *Id.* "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## 2. Lawfulness of Petitioner's Detention

The record before the Court, including Respondents' treatment of Petitioner, indicates that Petitioner was detained pursuant to the government's discretionary authority under § 1226(a). Respondents have effectively treated Petitioner as subject to detention on a discretionary basis under § 1226(a) and a reading of the plain text of the relevant statutes, structure, and case law favors a finding that § 1225's application of mandatory detention for noncitizens "seeking admission" is inapplicable to Petitioner.

Respondents suggest that this case is analogous to *Rodriguez-Figueroa v. Barr,* 442 F. Supp. 3d 549 (W.D.N.Y. 2020), characterizing the petitioner's detention there as "initially detained under § 1225(b) but later detained under § 1226(a)." Resp. at 18. In *Rodriguez-Figueroa*, the petitioner was not subject to a warrant for his arrest under § 1226, was not released on bond pursuant to § 1226, and he was not rearrested pursuant to a warrant under § 1226.

Petitioner's situation is distinguishable. The facts here are similar to *J.U.* and *Lopez Benitez*, where Respondents' treatment of petitioners through warrants and custody determinations authorized pursuant to § 1226 demonstrated petitioners were detained under § 1226. *See J.U.*, 2025 WL 2772765, at *5; *Lopez Benitez,* 2025 WL 2371588, at *4-5. ICE arrested Petitioner on

November 1, 2018 pursuant to a warrant under § 1226(a). *See* November 1, 2018 Arrest Warrant; Rey Decl. ¶¶ 10. His notice of custody determination ordered him released him on bond. Order of Release on Bond at p. 23. Accordingly, Respondents' treatment of Petitioner was pursuant to § 1226(a), as none of the DHS records related to Petitioner's November 2018 arrest and detention make any reference at all to § 1225(b). The same is true for Petitioner's current arrest and detention: Petitioner's arrest record from DHS is devoid of any reference to § 1225, and Respondents have not presented any related records to support their contention that Petitioner's detention on September 15, 2025 was pursuant to § 1225. In fact, just the opposite is true, as Respondents expressly state that the September 15, 2025 warrant for Petitioner's arrest was "authorized pursuant to sections 236 and 287 of the INA." Rey Decl. ¶ 26. Regardless of what Petitioner's designation *could have been* upon entry, Respondents thereafter consistently treated Petitioner not as mandatorily detained as a noncitizen seeking admission under § 1225(b), but rather as someone already in the country pursuant to Respondents' discretionary authority under § 1226(a). *See Lopez Benitez,* 2025 WL 2371588, at *5.

Respondents argue that Petitioner is subject to the mandatory detention authority under § 1225(b)(2), Resp. at 13. Further, Respondents maintain that "Petitioner has all along been subject to 1225 because he has never been admitted and he remains an applicant for admission, he was never able to have a bond. He did have a bond. It was revoked. He was rearrested." Tr. 40:17-20.[6] Not only are Respondents' arguments inconsistent, but they directly contradict the statutory language. Respondents do not dispute that the statutory language of § 1225 mandates detention.

---

[6] Respondents argued that Petitioner was "initially given a notice to alien order removed . . . giving him notice that he was subject to removal under 1225 because he had not been admitted" and "[s]ubsequently, he was released on bond . . . but the fact that he was released on bond and someone allowing that to happen at the time does not change the fact that the plain language of 1225 still applies and mandates that he should be detained" and "should have been detained under 1225" despite the fact that he was released on bond. Tr. 21:24-22:8; *see also* Tr. 27:22-28:2. Respondents clarified that "someone allowing that to happen" refers to ICE conducting an individualized custody determination to release Petitioner pursuant to INA 236. Tr. 22:18-23.

Tr. 28:3-6 ("The Court: . . . the plain language of the statute is that if it is that 1225 applies, then it is mandatory that he be detained. Ms. Lyons: Yes, Your Honor. That's the position.").[7]  As Respondents point out, the noncitizen is subject to mandatory detention until the conclusion of removal proceedings under § 1225.  *See* Tr. 44:21-24; *see also Jennings*, 583 U.S. at 287-88.

Petitioner's release on bond is incompatible with a discretionary release on parole into the United States within the meaning of § 1182(d)(5)(A).  Nothing in the record indicates Petitioner was subject to discretionary parole authorized under § 1225, and nothing in the record indicates that Petitioner was released on bond based on a case-by-case determination for urgent humanitarian reasons or public benefit.  Furthermore, discretionary parole is granted only on a temporary basis; however, there is no evidence that any "expiration of time" was placed upon Petitioner's release such that his bond automatically terminated.  *See* 8 C.F.R. § 212.5(e)(1); 8 U.S.C. § 1182(d)(5)(A) (providing that discretionary parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled"); *see* 8 C.F.R. 212.5(c) (officials may "after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, [8 U.S.C. § 1182(d)(5)(A)], any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate.").  In contrast, release on bond constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention.  *See Cruz-Miguel v. Holder*, 650 F.3d 189, 191, 198 (2d Cir. 2011) (distinguishing release on bond and conditional parole from being paroled into the United States, noting release on bond may be ordered under the executive's "broader authority" under § 1226).  The plain meaning of § 1225 is that "detention

---

[7] Given its findings here, the Court declines to reach the parties' estoppel arguments.

must continue until immigration officers have finished 'consider[ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 299.  Respondents' release of Petitioner on bond directly conflicts with the mandatory detention requirement of § 1225, and it instead squares with § 1226(a)(2)(A).

Respondents' construction of § 1225(b)(2)(A) disregards the plain meaning of that provision, would render § 1226 and a recent amendment to it superfluous, and is inconsistent with Supreme Court's prior statutory interpretations.  *See J.U.,* 2025 WL 2772765, at *7.

Respondents do not point to an Article III court that has adopted their expansive construction of § 1225(b)(2), but instead cite *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), to argue that Petitioner is an "applicant for admission" and therefore can be detained pursuant to § 1225, regardless of how many years they have been present in the United States. Resp. at 14-16.  In that case, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to § 1225(b)(2)(A).  *Matter of Yajure Hurtado*, 29 I&N Dec. at 227.  However, while the BIA decision might be a helpful guidance, this Court is not bound by it, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86, 401 (2024) (interpretation of the meaning of a statute belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities"), particularly where BIA made prior pronouncements to the contrary.  *See Matter of Yajure Hurtado*, 29 I&N Dec. at 225 n.6 ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection."); *see Martinez v. Hyde*, 25-11613 (BEM) 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (discussing prior BIA decisions). Under *Loper*, the Court is not required to defer to the BIA's recent interpretation, particularly when that view has not "remained consistent over time."  603 U.S. at 385-86 ("'the longstanding practice

of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is'") (citations omitted); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Respondents' reading and application of § 1225(b)(2) would subject nearly all noncitizens already in the United States but not previously admitted or entered illegally to § 1225(b)'s mandatory detention. If true, this application would render superfluous the mandatory detention provisions found in § 1226(c)(1)(A), (D), and (E) and the phrase "seeking admission" in §1225(b)(2)(A). Section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," such as crimes of moral turpitude and offenses relating to controlled substances. 8 U.S.C. § 1226(c)(1)(A); *see, e.g., Hasan v. Crawford*, 25-CV-1408 (LMB) (IDD) 2025 WL 2682255, at *9 (E.D.Va. Sep. 19, 2025) ("This mandatory detention under § 1226(c) would be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions."); *Lopez Benitez*, 2025 WL 2371588, at *6-8 (treating all applicants for admission as individuals "arriving in" the U.S. and "seeking admission" would negate the statutory construction, clearly violates the rule against surplusage, and would unduly narrow the application of § 1226). Likewise, Congress amended § 1226 this year with the Laken Riley Act by adding § 1226(c)(1)(E), which makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain

crimes. 8 U.S.C. § 1226(c)(1)(E). Even under this new amendment, only when the inadmissibility and the criminal conduct criterion are both satisfied did Congress intend for mandatory detention to be triggered. *See Gomes,* 2025 WL 1869299, at *6. Thus, Respondents' position that § 1225 applies to noncitizens who are arrested on a warrant while residing in the United States would render § 1226(c)(1)(E)'s criminal conduct requirement superfluous, thereby "nullify[ing] a statute that Congress enacted this very year." *Id.* at *7. In sum, the Court concludes that Respondents' reading of the relationship between § 1226 and § 1225 would contravene Congress's intent that, except as provided in § 1226(c), § 1226(a)'s discretionary framework applies to all citizens arrested on a warrant while residing in the United States.

The plain text of the statutes also favors a finding that Petitioner is subject to § 1226. Factually, the officer issuing Petitioner's December 4, 2018 Notice to Appear did not deem Petitioner to be an "arriving alien" but instead deemed him, at the time, to be "present" in the United States. Notice to Appear at p. 25. This is consistent with the Supreme Court's interpretation that noncitizens "seeking admission" means something different from those already present in the United States. In 1958, the Court held that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality[;] [i]n the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court later explained in *Zadvydas v. Davis* that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." 533 U.S. 678, 693 (2001) (noting that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United

States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  In *Jennings*, the Supreme Court reaffirmed this principle, stating that § 1225(b) governs "aliens seeking admission into the country" whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings.  583 U.S. at 289.  And as recently as 2020, in *Department of Homeland Security v. Thuraissigiam*, where a petitioner was arrested a mere 25 yards after crossing the border, the Supreme Court held that he was still "at the threshold of initial entry" and although technically in the country, could still be treated as "an alien seeking initial entry."  591 U.S. 103, 114 (2020) (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border and therefore due process claim failed).  It continues to be the law of in this country that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).  Here, the Court finds that Petitioner "effected entry" into the United States in the nearly seven years since his release, *see Thuraissigiam*, 591 U.S. at 140, and therefore was "already in the country," *see Jennings*, 583 U.S. at 289; *see also J.U.,* 2025 WL 2772765, at *8.

Accordingly, the Court finds that Petitioner is subject to discretionary detention under § 1226(a) as is consistent with Respondents' treatment of Petitioner and the plain statutory text.

**D.  Whether ICE's Detention of Petitioner Violates the Due Process Clause**

The Court now addresses whether ICE's detention of Petitioner violates his due process rights.  The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law."  U.S. CONST. AMEND. V.  The Supreme Court has repeatedly and recently reiterated that the Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings.  *See Trump v. J.G.G.*, 145

S. Ct. 1003, 1006 (2025). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that due process protections extend to noncitizens, including those in removal proceedings. *See id.* at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." *J.U.*, 2025 WL 2772765, at *9 (quoting *Valdez*, 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (collecting cases)).

The Second Circuit has held that the *Mathews v. Eldridge* three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335. The Court rejects the premise that Petitioner's detention does not violate the Due Process Clause because he was subject to mandatory detention.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner contends that

he was wrongfully detained without an individualized determination. Reply at 7. Petitioner's liberty interest is clearly established. *See J.U.,* 2025 WL 2772765, at *9; (citing *Valdez*, 2025 WL 1707737, at *3). Unlike the petitioner in *Thurassigiam*, Petitioner was affirmatively released under the § 1226(a) discretionary framework.

With respect to the second prong of the *Mathews* test, the record demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in September 2025, and there was no change in circumstances between the time DHS released Petitioner on bond to his re-arrest and detention. *See* Tr. 36:12-18 (Respondents admitting ". . . there was not an individualized determination."). Thus, the risk of erroneous deprivation of Petitioner's liberty interest is high. *See J.U.*, 2025 WL 2772765, at *10 (finding a risk of erroneous deprivation where petitioner was re-detained absent a change in circumstances or individualized determination).

As to the third and final *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *J.U.*, 2025 WL 2772765, at *10 (citing *Valdez*, 2025 WL 1707737, at *4; *Velasco Lopez*, 978 F.3d at 854; *Zadvydas*, 533 U.S. at 690); *see also Lopez Benitez*, 2025 WL 2371588, at *12. Here, as stated above, nothing suggests that Petitioner is a flight risk or a danger to the community. Rather, the record evidence shows that, in the nearly seven years that Petitioner has resided in the United States, he timely filed for asylum application, appeared at his immigration court proceedings, has family ties in New York, never violated the terms of his bond, has a work authorization, and has had no criminal history. Reply, at 7-8, 10; Pet. at ¶¶ 14-19; Tr. 37:20-21; September 30, 2025 Letter Regarding Petitioner's Immigration

Court Appearances, Dkt. 19.  There is no evidence that Petitioner posed a risk of flight or danger to the community sufficient to justify his detention.  Thus, Respondents have failed to show a significant interest in Petitioner's continued detention.

Respondents' ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights. *See J.U.*, 2025 WL 2772765, at *10 (citing *Valdez,* 2025 WL 1707737, at *4; *Lopez Benitez*, 2025 WL 2371588, at *15).  Given the absence of any deliberative process prior to or contemporaneous with the deprivation of Petitioner's liberty, formerly granted and approved by Respondents, a writ of habeas corpus is the only form of relief and the most appropriate remedy.  *Id.*

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, Dkt. 1, is granted.  Respondents are ORDERED to transport Petitioner back to the Eastern District of New York by October 6, 2025, and immediately upon effectuating his transfer, to release Petitioner from custody, and by October 7, 2025, to certify compliance with this Order by a filing on the docket noting specifically that Petitioner has been transported back to the Eastern District of New York and released.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

October 5, 2025
Brooklyn, New York